UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 JUN 23 A 10: 02

[CLERK STAMP]

| | | |
|---|---|---|
| Wendell Lamar Wilson, | * | |
| Petitioner, | * | |
| | * | |
| vs. | * | Civil No. 2:06Cr505-MHT |
| | * | Criminal No. ~~02-01-CR-149-T~~ |
| | * | |
| United States of America, | * | |
| Respondent, | * | |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF A PRO SE MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes Wendell L. Wilson, proceeding pro se[1] in the above styled action and numbered cause, to be referred herein after as "Petitioner," respectfully moving this most honorable court with his memorandum of law in support of his pro se motion for relief pursuant to 28 U.S.C. § 2255. In support of this memorandum the petitioner hereby avers as follows:

## PROCEDURAL BACKGROUND SUMMARY

The petitioner was arrested by a police officer of the Montgomery County Police Department, within the County of Montgomery, in the state of Alabama on or about December 18, 2000. Petitioner's arrest was based on an alleged traffic stop for which no citation was written, but after an unconsented vehicle search resulted in the seizure of a .40 caliber Glock pistol. Petitioner was additionally charged with possession with intent to distribute cocaine.

The states charges resulted in a Nolle Proseque disposition, based on insufficiency of the evidence, and a compelling question, as to whether there was sufficient probable cause to

---
[1] See Haines v. Kerner, 404 U.S. 519, 30 L.Ed 2d 652, 92 S.Ct. 594 (1972)

1

conduct the vehicle search. On or about December 21, 2004, petitioner was arrested by federal authorities, based on a four count indictment, returned by a grand jury sitting in the United States District Court for the Middle District of Alabama, charging conspiracy in violation of 21 U.S.C § 846 (Count 1); Possession with intent to distribute, in violation of 21 U.S.C. § 841 (a) (1) (Counts 2-4);[2] and Possession of a Firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924 (c) (1) (A) (i) (Count 5).[3] On or about December 23, 2004, petitioner was released on a $25,000 unsecured bond.

On or about February 25, 2005, petitioner entered a into a plea agreement, to count 5 of the indictment, with a recommendation to dismiss the remaining counts of the indictment at the time of sentencing.[4] A Presentence Investigation Report ("PSR") was prepared by the United States Probation Department,[5] and on June 2, 2005, petitioner was sentenced to the term of 60 months imprisonment, with a term of three (3) years supervised release was imposed to include a One Hundred ($100) dollar special assessment. It is vital to note, that petitioner sought to have counsel withdraw his guilty plea within days of pleading before the Magistrate Judge, but counsel never filed the motion. Petitioner mentioned to counsel that he desired an appeal of the conviction, but no appeal was filed as anticipated, thereby giving cause for the current action before this honorable court.

---

[2] The Indictment did not mention a specific drug amount in accordance with the Sixth Amendment, to provide fair Notice to Mr. Wilson, in violation of United States v. Booker, and its prodigy.
[3] It is compelling to note, that there was no evidence that Mr. Wilson had sold drugs, or possessed a firearm while doing so.
[4] Mr. Wilson entered a plea agreement before a Magistrate Judge, without being informed of his constitutional right to appear before an Article III Judge of the District Court authorized by the United States Constitution, to handle criminal trials and/or waiver of constitutionally protected rights.
[5] Mr. Wilson was not afforded the opportunity to go over the PSR with counsel. In fact counsel did not afford Mr. Wilson with a copy of the PSR until 2 days before sentencing, at which time he again requested counsel to withdraw the guilty plea.

2

## **SUMMARY OF THE ARGUMENT**

The petitioner asserts that his Fourth, Fifth, and Sixth Amendment Rights were violated due to substantially deficient performances of counsel. Specifically, it is asserted that counsel failed to file a notice of appeal, or prosecute a direct appeal upon being requested by the petitioner. Based on counsel's abandonment of the desired appeal, petitioner prays that this most honorable court reinstate his right to prosecute the anticipated appeal.

Petitioner asserts that counsel of record made a variety of material misrepresentations of fact and law, to him, during the course of the pre-trial proceedings. Specifically, petitioner asserts that counsel misinformed him as to his questions concerning jurisdiction, and induced him into entering a guilty plea based on misrepresenting the charges and sentencing culpability, he would face upon conviction at trial.[6] Because counsel misrepresented the facts and law, concerning the government's case in chief, petitioner did not make an informed decision, thereby, questioning whether the plea was knowing, voluntary, and intelligent.[7] Petitioner asserts that he would have proceeded to trail absent counsel's acts or omissions.

Petitioner asserts that his right against double jeopardy was violated when he was originally charge with the instant offense in the state court, was represented by the same attorney, and prosecuted by the identical prosecutor, acting as an assistant district attorney in the state court, who subsequently became an assistant United States Attorney ("AUSA").[8] Because of the strong inference of prosecutorial misconduct, to wit vindictive prosecution, venue and

---

[6] By looking at the amount of time between arrest and plea (2 months), we see that counsel did not pursue an effective defense preparation.
[7] Mr. Wilson argues that he was not fully informed that he had the right to object to entering a constitutional waiver of his right to trial before a magistrate judge. Even after the magistrate entered a Report and Recommendation on the entry of the plea, Mr. Wilson was not told that he had a right to further object to the written recommendation.
[8] Mr. Wilson argues that there was improper forum shopping, and post accusation delay, when the assistant district attorney initially Nolle Proseque the case in the state court, but when she became a federal prosecutor she reinstated the prosecution in the federal venue.

3

forum shopping, petitioner prays that the court find his double jeopardy protection was violated, and the conviction should be vacated.

Finally, petitioner asserts that there was a conflict of interest, between him and counsel of record, when counsel failed to adhere with petitioner's request for challenging the insufficiency of the evidence. Petitioner asserts that his Fourth Amendment rights were violated in the state, giving reasonable cause for the disposition by Nolle Proseque for insufficient evidence. The state evidence could not be used in federal court, if found to have violated the Fourth Amendment protections in the state proceedings.

## ARGUMENTS

### I. WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO PROSECUTE REQUESTED DIRECT APPEAL OR IN THE VERY LEAST FILE A NOTICE OF APPEAL

Petitioner argues that he was denied effective assistance of counsel when, though attorney of record was aware of a compelling issue of defense, he failed to aggressively pursue same, as well as failed to prosecute a direct appeal when requested, or in the very least a notice of appeal to allow petitioner the opportunity of substitute counsel to prosecute said appeal. The law is well settled, in this and many other circuit courts, that not filing an appeal when requested to do so by the client is per se ineffective assistance of counsel. See Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005).[9]

Petitioner argues that during the course of the proceedings, he made numerous inquiries to counsel, in regards to why counsel kept pushing for him to plead guilty, instead of preparing for trial. Counsel then instructed petitioner that he was facing a life sentence, based on the conspiracy, drug counts, and the firearm possession combined. After being afforded the

---

[9] Also see Bonneau v. United States, 961 F.2d 17 (1st Cir. 1992); Castellano's v. United States, 26 F.3d 717 (7th Cir. 1994); and McHale v. United States, 175 F.3d 115, 119 (2nd Cir. 1999).

opportunity to briefly view the PSR, petitioner requested counsel to withdraw the plea, so that he could proceed to trial. Petitioner had become aware through self research after entry of the plea, that the Supreme Court issued opinions that restricted the applicable sentencing culpability, to facts found beyond a reasonable doubt by a jury, and his maximum sentence was not life under the United States Sentencing Guidelines ("U.S.S.G.")), but no more than 87 months upon conviction at trial.[10]

Counsel had abandoned petitioner's request to withdraw the plea as he told him he would, and did not converse with petitioner again until the day of sentencing. Petitioner again expressed that he was confused, as to why counsel did not file the requested motions, and that he wanted to appeal the conviction, at which time counsel told petitioner to "keep quiet or you are going to upset the prosecutor and the judge," who would make sure petitioner got more time in prison. Petitioner then followed counsel's advice and went through the sentencing proceeding, but then again instructed counsel after sentencing he wished to appeal.[11]

As delineated in Roe v. Flores Ortega, 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed 2d 985 (2000) ("When counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim, entitling him to an appeal"). The Sixth Amendment guarantees that the accused shall "have the assistance of counsel on his defence." The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful "defence." See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 1931, 18 L.Ed 2d 1149 (1967).

---

[10] Because he had a good defense, in addition to the fact it was discovered that the government had not provided him any benefit with a guilty plea Mr. Wilson sought to withdraw said plea.

[11] This request was followed up by numerous attempts by Mr. Wilson and his family to contact counsel, as to the status of said appeal, but counsel did not return the messages left for him, prompting this action under § 2255.

In <u>Evits v. Lucey</u>, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed 2d 821 (1985), the court held that the due process clause of the Fourteenth Amendment guarantees a criminal defendant the right to effective assistance of counsel on appeal. The court stated:

> "In bringing an appeal as of right from his conviction a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face adversary proceeding that – like a trial – is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented defendant at trial – is unable to protect the vital interest at stake. To be sure, respondent did have nominal representation on appeal as of right – like nominal representation at trial – does not suffice to render proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." Id at 396, 105 S.Ct. 836.

Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, see supra, 488 U.S. at 85 [109 S.Ct. at 352], the presumption of prejudice must extend as well to the denial of counsel on appeal. If the error was the loss of the right to appeal, this may be reviewed under § 2255 and relief may be granted. If petitioner has successfully shown that he was denied the right to a direct appeal, the proper remedy is to vacate the sentence and remand for resentencing.[12]

For the reasons argued above, petitioner respectfully prays that this most honorable court remand this action for further development of the record, and to afford him the right to file his requested and anticipated direct appeal, to avoid a complete miscarriage of justice.

---

[12] See <u>Rodriguez</u>, 395 U.S. at 332, 89 S.Ct. 1715 (1969) (remanding to district court for resentencing as to whether trial counsel failed to file notice of appeal); <u>McHale</u>, 175 F.3d at 119-20 (noting that remand for resentencing or entry of new judgment is usual remedy for counsel's failure to file requested appeal).

## II. WHETHER COUNSEL'S MATERIAL MISREPRESENTATIONS OF FACT AND LAW INDUCED PETITIONER INTO ENTERING AN UNKNOWING, INVOLUNTARY, AND UNINTELLIGENT PLEA, IN VIOLATION OF THE FOURTH, FIFTH AND SIXTH AMENDMENTS

Petitioner argues that he had an expressed desire to proceed to trial on the Indictment's charges, to compel the government to meet its burden of proof on every element charged, beyond a reasonable doubt. This claim is bolstered by the fact that petitioner was charged with the identical charges in the state court, and the insufficiency of the evidence caused the state action to be Nolle Proseque by the state court in the year 2001. At the point in which the case was Nolle Proseque, petitioner had invoked his constitutional right to trial by jury.

Counsel misled petitioner as to his questions regarding the double jeopardy concerns, when he asked, "How can these charges be dismissed in the state that originally arrested and charged me and charged again by the same prosecutor in the federal court?" Counsel told petitioner[13] "…the government can pretty much do what they want, but we can fight this case if you want to." Although counsel asserted he would help petitioner fight the criminal action against him, he would not send or provide petitioner with any of the discovery materials requested.[14] Counsel not only failed to honor petitioner's requests, but he made every attempt to compel petitioner to hurry up and plead guilty, or he would "face a life sentence."

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right… to have assistance of counsel which 'guarantees an accused adequate legal assistance.'" United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "Unless the accused receives effective assistance of counsel, 'a serious risk of injustice infects the trial itself.'" Id. at 656, 104 S. Ct. 2039 (Quoting Sullivan, 466 U.S. at 343, 100 S. Ct. 1708). A

---

[13] During the PSR interview, with the probation department, counsel stated to Mr. Wilson and the probation officer: "We can beat this case!"

[14] This would have aided Mr. Wilson in assuring that he was making an informed decision as to the benefit of trial or plea.

criminal defendant has the right to adequate legal assistance at all critical stages of the proceedings against him, or whenever his substantial rights may be affected.

> The plea bargain stage of the proceeding is a critical stage at which the right to effective assistance of counsel attaches. An accused has the right to make a reasonably informed decision whether to accept a plea offer.[15] During the critical stage of the proceedings when petitioner sought to make an informed decision as to the consequences of pleading guilty or proceeding to trial, the facts as demonstrated herein affirmatively supports that (1) counsel's advice and performance fell below an objectionable standard of reasonableness.

A stage is deemed critical if the accused is "confronted by the legal system in that he has related choices before him … and he could profit from the expert advice of counsel." Petitioner argues that he would not have pled guilty absent the material representations of counsel. United States v. Correz-Tobon, 748 F.2d 1509 (11th Cir. 1984). In Williams v. Taylor, 146 L. Ed. 2d 389 (2000), the United States Supreme Court articulated the standard of a claim of ineffective assistance of counsel as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense.

In Williams, the Court endorsed the straightforward application of Strickland v. Washington, 466 U.S. 668, 80 L. Ed 2d 674, 104 S. Ct. 2052, a scenario where defense counsel's acts or omissions deprive the defendant of a substantiative or procedural right to which the law entitles him. Id. at 1513. Performance is measured against an objective standard of

---

[15] See Hill v. Lockhart, 474 U.S. 52, 56–57 (1985) (Voluntariness of guilty plea depends on adequacy of counsel's advise).

reasonableness, eliminating strategic decisions, which are within the province of defense counsel. Decisions are not strategic unless they are backed by (a) reasonably independent investigation of facts and (b) a reasonable trial strategy from which the defendant could realize some tangible advantage or benefit. In the case at bar, counsel's deficient performance caused petitioner to waive his Fourth Amendment right,[16] Fifth Amendment right,[17] and Sixth Amendment right,[18] all waived in an unknowing, and unintelligent manner.

The written record reflects that petitioner's co-defendant's court appointed attorney filed motions addressing the identical claims asserted above, (omitted by petitioner's counsel), for which a hearing was scheduled as to each claim. Petitioner argues that there was a cumulative effect of errors and omissions, by counsel, without which he would have proceeded to trial, not only challenging the weakness of the case, but also invoking the Sixth Amendment protections delineated in Apprendi/Blakely and Booker, as to his culpability.[19] Petitioner respectfully prays that this most honorable court will move to grant him a new trial, based on the constitutional violations argued herein, to avoid a complete miscarriage of justice.

### III. THERE WAS A SEVERE DOUBLE JEOPARDY VIOLATION AND EVIDENCE OF PROSECUTORIAL MISCONDUCT BY THE PROSECUTION THROUGH PERSONALLY LITIGATING THIS CASE AS AN ASSISTANT DISTRICT ATTORNEY AND THEN AN AUSA

The record established in the Montgomery County Court, conclusively demonstrates that Attorney Susan R, Redmond ("Redmond"), was working as the assistant district attorney who prosecuted petitioner in the state proceedings, that resulted in the instant federal offenses, of

---

[16] Mr. Wilson had viable arguments to challenge under the Fourteenth Amendment i.e., A motion to suppress based on insufficient probable cause to conduct a vehicle search or even pull the vehicle over in the first place.
[17] Wilson was denied Due Process on a viable challenge, by way of a motion to sever, or challenge to the double jeopardy violation and the right to due process upon appeal.
[18] Wilson was denied his right to a trial by jury, and/or that his culpability be refined to facts proven beyond a reasonable doubt, or admitted based on an informed decision.
[19] Counsel failed to even inform Mr. Wilson of the implications of Blakely/Booker on his situation.

which she also prosecuted when she became an assistant united states attorney.[20] The issue concerning "the failure to prosecute – decision to seal the indictment, to delay its unsealing for three years, and to direct the interim investigation," became a compelling issue, evidenced by an Order dated January 20, 2005,[21] by United States Magistrate Judge Vanzetta Penn-McPherson. The magistrate directed the production of evidence and/or testimony in these regards. This order sought to establish, who was responsible for the above mentioned decisions, which would have effectively revealed the compelling inference towards prosecutorial misconduct and vindictive prosecution if effectively challenge by counsel.

A clear and precise reading of the criminal indictment demonstrates that petitioner's charges were broad and ambiguous, as to the conspiracy, possession with intent to distribute, and possession of a firearm in furtherance of a drug trafficking offense.[22] This evidence presented by the government reflects that petitioner was being charged with activity previously charged in state court.[23]

The Double Jeopardy Clause bars subsequent prosecution where to establish essential element of offense; prosecutor will prove conduct constitution previously prosecuted offense. In other words the government should not use a crime of which a defendant has already been prosecuted for or convicted of to prove its current case.[24] The test for Double Jeopardy is

---

[20] Ms. Redmond was the party that elected to Nolle Proseque the state charges, but then held them over, so that she could resume prosecution when she became a federal prosecutor.
[21] The Order was in response to four pretrial motions filed by Mr. Wilson's co-defendant's counsel, a motion which Wilson's counsel failed to adopt or file any motions similar.
[22] There was no evidence that Mr. Wilson had sold drugs, or that he conclusively used or possessed the firearm in furtherance of a drug trafficking offense.
[23] Because of the compelling question of venue or forum shopping by the prosecution, coupled with the double jeopardy concern, counsel was responsible for protecting his client from being charged or convicted twice for the same allegation.
[24] See United States v. Easley, 942 F. 2d 405 (6th Cir. 1991); and Grady v. Corbin, 495 U.S. 508, 109 L. Ed. 2d 548 110 S. Ct. 2084 (1990).

whether each offense requires proof of additional fact, which the other does not. North Carolina v. Pearce, 395 U.S. 711, 23 L. Ed. 2d656, 89 S. Ct. 2072 (1969):

1) Double Jeopardy Clause protects against second prosecution for same offense after acquittal, second prosecution for same offense after conviction, and against multiple punishments for same offense.
2) Government violates Double Jeopardy Clause if it divides single conspiracy into multiple prosecutions.

The ambiguity in definition of conduct, which is to be punished, must be settled against turning single conspiracy into multiple offenses. United States v. Jones, 841 F. 2d 1022 (10th Cir. 1988); United States v. Naas, 755 F. 2d 1133 (5th Cir. 1985); also Blockburger v. United States, 284, 299, 76 FL. Ed. 306, 52 S. Ct. 180 (1932).

Petitioner's claim of vindictive prosecution is evidenced by the fact that Attorney Redmond, finding that her case was weak in the state prosecution, abused her authority, by transferring the case sue sponte, when she became a federal prosecutor. In the case at bar, the weight of the evidence did not make a conviction certain, absent the improper conduct of the prosecutor.[25] This action concerning the prosecutor's conduct leaves the strong inference that petitioner's criminal prosecution and conviction may be in error, and the remedy would be to dismiss the indictment.

United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997) ("It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to justify presumption); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217 (9th Cir. 2001) (Prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising constitutional or statutory right); and Bragan v. Poindexter, 249 F.3d 476, 483-84 (6th Cir. 2001) (Realistic likelihood of prosecutorial

---

[25] See United States v. Creamer, 721 F.2d 342, 345 (11th Cir. 1985).

vindictiveness because no new evidence or legal impossibility gave rise to charge reinstatement after defendant exercised 1st Amendment rights by publicly criticizing initial prosecution).

The prosecutions actions in the case at bar raises a serious and compelling question, which there can be no room for doubt. This is such circumstances, as here, inherently results in a complete miscarriage of justice, and presents an "exceptional circumstance" that justifies relief from the unknowing waiver of a constitutional claim.

### IV. THERE EXISTS STRONG EVIDENCE THAT COUNSEL DID NOT HAVE PETITIONER'S BEST INTEREST AT HAND, THEREBY AFFORDING THE SUPPORT FOR A CLAIMED CONFLICT OF INTEREST

By looking at the clerk of the court's docket sheet, we can affirmatively detail the fact that counsel of record was not working in the best interest of his client. This area of counsel's deficient performance demonstrates that counsel spent more time focusing on compelling petitioner to plead guilty, even though petitioner protested with his desire to plead guilty, and petitioner was certain with his desire to proceed to trial, all the way up to the day he was sentenced.[26] Counsel was aware of the compelling issues raised above, and had a responsibility to maintain an adversarial relationship, to assure the best interest of his client.

In <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 334-45 (1980), the Supreme Court ruled that a defendant can demonstrate a Sixth Amendment violation by showing: (1) that defense counsel was actively representing conflicting interest, and (2) that the conflict had an adverse effect on specific instances of counsel's performance. At no time did petitioner ask counsel to discuss plea negotiations. Every time petitioner inquired about mounting a strategic defense for trial, counsel assured petitioner he was preparing motions, but would then make threats, that petitioner should

---

[26] Counsel had placed fear in Wilson at sentencing, and said his concerns would be best raised in an appeal pf the conviction, since he could not appeal the sentence, based upon the plea agreement.

plead guilty, demonstrating he had no interest in preparing for trial.[27] In taking the whole spectrum of counsel's omissions (failed to prepare for trial; failed to mount any double jeopardy defense; failed to challenge written plea agreement in best interest of petitioner; failed to move to object to magistrates report and recommendation, or withdraw guilty plea when requested in a timely manner; and failed to file notice of appeal, or prosecute requested appeal), we see that there was a cumulative effect of errors.

In the pre-trial setting counsel's misleading advice and deficient performance could reasonably be deemed violative of petitioner's Fifth Amendment right as counsel's improper representations did not allow petitioner the opportunity to make an informed decision, as to the overall consequences of his plea, thus inappropriately waiving his right against self incrimination. There can be no room for doubt, that such a circumstance, as here, inherently results in a complete miscarriage of justice, and presents an "exceptional circumstance" that justifies relief.

All of the facts addressed in this memorandum of law, coupled with the support of the written record, or lack thereof, affirmatively demonstrates that counsel did not have petitioner's best interest in mind. For this reason, an evidentiary hearing would be justified, to compel clarifying answers from counsel, in a valued effort to determine whether counsel's complete abandonment of viable issues warrants a new trial, based on competing interest, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

---

[27] See Reynolds v. Chapman, 253 F.3d 1337, 1347 (11th Cir. 2001) (counsels conflict of interest had adverse effect because prevented counsel from raising reasonable defenses in defendant's favor).

## **CONCLUSION**

Petitioner respectfully prays that this most honorable court will remand this action and issue an order of scheduling to conduct and evidentiary hearing. At this evidentiary hearing, further development of the record by way of testimonial evidence is necessary, to conclusively determine the relief warranted. If jurisdictional error is found, by way of a double jeopardy violation, and prosecutorial misconduct, a dismissal of the indictment would be warranted. If the constitutional violation stems from a Sixth Amendment error on the part of counsel, petitioner respectfully prays to withdraw his plea and proceed to trial. Finally, petitioner desires the reinstatement of his requested direct appeal, by way of a resentencing, to avoid a complete miscarriage of justice.

The Supreme Court in Marbury v. Madison, 5 U.S. 137 (1803), questioned, "if a defendant has a right, and that right has been violated, do laws of this country afford him remedy?" [5 U.s. 137, 163]. It then went on to say: "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."

Respectfully,

*Wendell L. Wilson*
Wendell L. Wilson, Pro se.
Reg. No. 11583-002
F.M.C. Devens, Box 879
Ayer, MA. 01432

## CERTIFICATE OF SERVICE

I Wendell L. Wilson do hereby affirm and attest that I have mailed a copy of the attached memorandum of law in support of my motion under 28 U.S.C. § 2255, to the Office of the U.S. Attorney, for the Middle District of Alabama (Northern Division), by first class pre paid mail on this 12th day of June 2006. Signed pursuant to the provisions of 28 U.S.C. § 1746.

*Wendell A. Wilson*
Wendell L. Wilson, Pro se.
Reg. No. 11583-002
F.M.C. Devens Box 879
Ayer, MA. 01432